Honorable Charles H. Hood Clerk of the Circuit Court Putnam County P.O. Box 758 Palatka, Florida 32077
Dear Mr. Hood:
This is in response to your request for an opinion on substantially the following question:
 WHERE A TAX CERTIFICATE FOR UNPAID AD VALOREM TAXES IS SOLD, AND AN EXCESS OF FUNDS FROM THAT SALE RESULTS OVER THE STATUTORY BID OF THE CERTIFICATEHOLDER AND THE AMOUNT NECESSARY FOR PAYMENT OF GOVERNMENTAL LIENS, IF MORE THAN ONE LIENHOLDER APPLIES FOR THE EXCESS, HOW SHOULD THAT EXCESS BE DISTRIBUTED?
Subject to the following comments, it is my opinion that these liens should each be satisfied in full according to their relative priority until exhaustion of the excess.
At the present time, your inquiry is governed by the provisions of ss 197.256(1)(a) and 197.291(2), F.S. 1981. The specific distribution of an excess bid under the circumstances about which you inquire is governed by s 197.291(2), supra, which reads in relevant part:
 If the property is purchased for an amount in excess of the statutory bid of the certificateholder, the excess shall be paid over and disbursed by the clerk. If the property purchased is homestead property and the statutory bid includes an amount equal to at least one-half of the assessed value of the homestead, that amount shall be treated as excess and distributed in the same manner. The clerk shall distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property. In the event the excess is not sufficient to pay all of such liens in full, the excess shall then be paid to each governmental unit pro rata. If, after all liens of record of the governmental units upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of the persons described in s. 197.256(1)(a), as their interests may appear. The clerk shall mail notices to such persons notifying them of the funds held for their benefit.
Those persons described in s 197.256(1)(a) include the legal titleholder, any lienholder of record who has recorded a lien against the described property, any mortgagee of record, any vendee under a recorded contract for deed or, if the contract is not recorded, any vendee who has applied to receive notice, any other lienholder who has applied to receive notices of the sale, and any person to whom the property was assessed on the tax roll for the last year in which the property was assessed.
Initially, I would like to direct your attention to two earlier opinions of our office. AGO's 078-64 and 077-99. These opinions both dealt with the distribution of excess proceeds under s 197.291(2), F.S., as it existed prior to its 1981 amendment as made by Ch. 81-284, Laws of Florida. Under the statutory scheme, as it existed prior to its 1981 amendment, any excess was distributed first to satisfy all governmental liens, and any remaining excess was then distributed to the titleholder of record, with no other lienholders being statutorily entitled to participate in the excess. In speaking of this distribution scheme, my predecessor said, first in 1977, with the language being repeated in the 1978 opinion:
 Application of this statute in certain circumstances involving perfected federal tax liens, state liens for sales or intangible taxes, workmen's compensation liens, county welfare liens and perfected private mortgage and other liens may encounter constitutional difficulty, however, because compliance with its mandate could alter the lawfully established and the normal priority of liens and extinguish a lienholder's or property owner's rights in or to the surplus proceeds of the tax deed sale. Such application and distribution of such proceeds may operate to divest or impair constitutionally protected contractual and lien or property rights in violation of the Due Process and Contract Clauses of the Florida and United States Constitutions, in the absence of statutory notice that such rights may be so divested or impaired by operation of the distribution scheme prescribed by the statute. To the extent that such distribution displaced or impaired a federally held lien, the statute would appear to be violative of the Supremacy Clause of the United States Constitution.
 The Attorney General cannot declare a statute unconstitutional or advise any officer to disregard a legislative direction or mandate. On the contrary, the statute is presumed to be constitutional and must be given effect until judicially declared invalid. In the event that the clerk of circuit court has reasonable doubts as to the statute's validity or its application in the foregoing circumstances or his duties thereunder, he has standing to bring an appropriate judicial proceeding for declaratory relief against the property owner and the holders of perfected and recorded liens to determine its validity and his duties thereunder.
It appears that some of the constitutional problems noted by my predecessor have been cured by the 1981 amendment, if it is properly construed and applied, at least. However, to the extent that the present statute would still allow a governmental lien to be satisfied prior to another lien which was perfected at an earlier time, some of the problems noted in these earlier AGO's concerning the constitutionality of the statutory distribution scheme may still exist.
However, your question specifically concerns the priority of payment available to those listed in s 197.256(1)(a), F.S., who have applied for the surplus funds held for their benefit, after the government liens, if any, have been satisfied. The statute itself does not elaborate on how or the priority in which the funds are to be distributed to those persons listed who have applied for the excess proceeds of the sale. However, these earlier AGO's indicate that unless a distribution scheme is utilized which accords those other liens their proper priority, constitutional problems with the statute may exist. It is, of course, a fundamental rule of statutory construction that a statute should be construed in such a way as to perserve its constitutionality where it could be subject to varying constructions.
Thus, it would be my conclusion that mortgagees and lienholders of record should be paid first and that these liens should be satisfied in full, each according to its priority, before applying the excess to a junior lien. As the Court said in United States v. First Federal Savings Loan Ass'n., 155 So.2d 192, 193 (2 D.C.A. Fla., 1963):
 `The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, . . . .'
The question of the relative priority of liens is a fairly complex one. However, the relative priority of various types of liens was extensively discussed by my predecessor in AGO 077-99. To the extent that the various types of liens which he describes are included within the distribution to lienholders described in s 197.256(1)(a), F.S., the comments in AGO 077-99 concerning the priorities would appear to be applicable here. The general rule of priority is stated in United States v. Federal Savings Loan Ass'n., supra, to the effect that: `In determining lien priorities the usual rule is `first in time, first in right."155 So.2d at 193. Insofar as the interests of the titleholder of record, a vendee under a recorded or unrecorded contract for deed, or another person to whom the property may have been last assessed are concerned, their interests would almost always appear to be inferior to those of a recorded lienholder or mortgagee.
It must be noted that the subject matter about which you inquire can be a matter of relative legal complexity. As my predecessor noted in the two earlier AGO's where there are doubts as to the proper application of the statute, it would appear that the clerk would have standing to bring an appropriate judicial proceeding for declaratory relief or interpleader against the holders of the various liens and interests in the property.
Therefore I conclude that in instances where more than one lienholder of record applies for surplus proceeds of a tax sale held for their benefit pursuant to s 197.291(2), F.S., the excess proceeds of the sale should be first distributed to mortgagees and lienholders of record according to their lien's priority until exhaustion of such excess or before distribution of any part of such excess proceeds to a junior or subordinate lienholder. Where there exists doubt as to the statute's proper application, the clerk of the circuit court has standing to bring an appropriate judicial proceeding for declaratory relief or interpleader against the holders of liens against and interests in the affected property.
Sincerely,
Jim Smith, Attorney General
Prepared by: E. Wilson Crump, II, Assistant Attorney General